IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DOUGLAS P. TRAUTMAN          )
                             )
        Plaintiff,           )
                             )          Civil Action No. 06-1037
v.                           )
                             )
THE COUNTY OF ALLEGHENY,     )
and ALLEGHENY CORRECTIONAL   )
HEALTH SERVICES,             )
                             )
        Defendants.          )

## MEMORANDUM OPINION

CONTI, District Judge.

In this memorandum opinion, the court considers two motions for summary judgment, one filed by the County of Allegheny ("Allegheny County") and the other filed by Allegheny Correctional Health Services ("ACHS," and together with Allegheny County, "defendants"). (Doc. Nos. 68, 71.)  Plaintiff Douglas P. Trautman ("Trautman" or "plaintiff") brought an action against defendants alleging violations of 42 U.S.C. § 1983.  The pending motions were filed in response to the second amended complaint of plaintiff, an inmate at Allegheny County Jail ("ACJ") at all times relevant to this action. (Doc. No. 52.)  In count I of his second amended complaint, plaintiff asserts that defendants violated his right to be free from cruel and unusual punishment, based upon the Eighth and Fourteenth Amendments.  Plaintiff avers that he was denied proper medical treatment for both an abscessed tooth and depression. (2d Am. Compl. ¶ 35.)  On October 20, 2008, count I was dismissed with respect to defendant Allegheny County. ACHS moved for summary judgment with respect to count I.

At count II, plaintiff claims defendants violated his First and Fourteenth Amendment rights based upon a theory of retaliation.  Plaintiff asserts that he made complaints about his removal from alternative housing, and that defendants wrongfully denied him psychiatric and medical treatment in retaliation. (2d Am. Compl. ¶ 50.)  Plaintiff also alleges that those acts were taken in accordance with the "policies, practices, and customs" of ACHS and ACJ. (2d Am. Compl. ¶ 54.)  Defendants moved for summary judgment with respect to count II. (Doc. Nos. 68, 71.) Defendant ACHS labeled plaintiff's retaliation claims as unfounded, asserting that plaintiff failed to meet the standards for a § 1983 retaliation claim.  Defendant Allegheny County averred that it may not be held liable as a municipality since plaintiff failed to point to a specific policy leading to a violation of his constitutional rights.  Both defendants maintain that upon review of all evidence of record, no genuine issues of material fact exist and they are entitled to a judgment in their favor.

## FACTUAL BACKGROUND

Plaintiff filed the original action against defendants on August 2, 2006. (See Doc. No. 1.) On December 20, 2006, plaintiff filed his first amended complaint. (See Doc. No. 15.) On March 13, 2008, plaintiff filed his second amended complaint, alleging defendants unconstitutionally subjected him to cruel and unusual punishment and retaliated against him. (See Doc. No. 52.) The cruel and unusual punishment claim was dismissed with respect to defendant Allegheny County. (See Doc. No. 64.) On November 20, 2008, defendants filed the pending motions for summary judgment. (See Doc. Nos. 68, 71.)

While incarcerated at ACJ, plaintiff alleges that he had a serious tooth condition and severe depression and that defendants failed to treat properly those medical conditions, even after

plaintiff made numerous requests for medical care. (2d Am. Compl. ¶¶ 21, 23.)  ACHS is a

Pennsylvania corporation under contract with Allegheny County to provide medical care to

inmates.  Typically, if an inmate needs medical attention, a nurse sees the inmate and if

necessary, makes an appropriate referral.

Plaintiff was incarcerated at ACJ after pleading guilty to one count of corruption of

minors.  Plaintiff's sentence was imposed in the Court of Common Pleas of Allegheny County.

(Allegheny County's Mot. for Summ. J., Ex. C ("Plea and Sentencing Hr'g Tr.").) Transcripts of

the proceedings indicate that plaintiff was sentenced to seven to fourteen months imprisonment

in ACJ with the recommendation that he be placed in alternative housing:

> [Judge:] Mr. Troutman [sic], at count nine I order you to pay
> the costs, undergo a term of 7 to 14 months in the
> [ACJ] with the recommendation that you be placed
> in alternative housing at the Renewal Center
> effective February 16. Understand that if you do not
> complete the Renewal program then you will have
> to serve time in the Allegheny County Jail.

(Id. at 6.)

From February 16, 2005 until approximately ten days later, plaintiff was incarcerated in

ACJ, during which time he was given a physical exam by a medical professional, was evaluated

by a psychiatrist, and was placed on Effexor and a blood pressure medication. (Allegheny

County's Mot. for Summ. J., Ex. J ("Trautman Dep.") at 32-33, 87.) The physical exam took

place in a medical room and lasted approximately thirty to forty-five minutes. (Id. at 87.)

Despite receiving exams and medication, plaintiff criticized the care he received during this ten-

day period, stating "I didn't get care." (Id. at 32-33.) Plaintiff's medical records indicate that on

February 23, 2005, he was prescribed Effexor for a sixty-day period. (Allegheny County's Mot.

for Summ. J., Ex. I.)

On February 25, 2005, plaintiff was transferred from ACJ to ADA's House, an alternative housing facility. (Trautman Dep. at 86-87.)  Less than two months later, however, plaintiff was removed against his will from ADA's House. On April 12, 2005, he was returned to ACJ to serve his sentence. (Id. at 87-88; 2d Am. Compl. ¶ 12.) A Residential Incident Report from ADA's House indicates that he was returned to ACJ "due to his charges and that he was asking women to bring their kids down to the 12 step meetings." (Pl.'s Mot. for Summ. J., Ex. F.)

Plaintiff asserts that he made numerous complaints about being removed from ADA's House. As a result, plaintiff alleges that he was retaliated against and denied treatment for both his medical and psychiatric conditions, particularly during the time frame of June 6, 2005 until July 15, 2005. (2d Am. Compl. ¶¶ 25, 26.)  In his deposition, however, plaintiff indicated that he has "no reason to believe" that the delay in getting him dental treatment was related to his complaints about being removed from alternative housing.  (Trautman Dep. at 83.)

After plaintiff's April 2005 return from ADA's House to ACJ, plaintiff received an examination and evaluation similar to that which he received when he entered ACJ in February 2005. (Id. at 88.)  During the April 2005 examination, he discussed his medical and psychological concerns with a female member of the jail's medical staff. (Id. at 88-89.) Plaintiff stated that he did not receive medication for a two-week period following his re-entry to ACJ. (Id. at 83.) He testified that, as a result of not receiving Effexor for these two weeks, he "was extremely depressed." (ACHS's Br. in Supp. of Mot. for Summ. J., Ex. 3 at 63-64.) The Effexor was to hold off feelings of depression and sadness. (Id.) Plaintiff could not recall whether the failure to treat him with Effexor for the two-week span had any physical effects on him. (Id. at 67.)

An April 26, 2005 entry on plaintiff's medical records indicates that "he was very concerned that he did not get his meds"; he was again prescribed Effexor for a sixty-day period. (Allegheny County's Mot. for Summ. J., Ex. I.) The medical notes indicate that on June 8, 2005, he was ordered to continue to take Effexor. (Id.) On July 23, 2005, he was again prescribed Effexor for sixty days. (Id.)

Plaintiff first had tooth pain in May 2005. (Trautman Dep. at 80.) Plaintiff testified that he saw a dentist twice prior to July 12, 2005:

> I believe [I saw a dentist] – I'm not sure, but I believe on two different occasions, the first time in May when I was diagnosed with a bad tooth which progressed into an abscess which in June – I think June 6th or 9th that I wrote Dana Phillips about, asking her please get me some help and it still took another whatever, four, five weeks, before they put me on the antibiotic and then put a temporary filling in it. Before that I was shoving paper in it.

(Id. at 82.) Plaintiff was seen by a dentist the same month he raised his first complaint, and was diagnosed with "a bad tooth." (Id.) Plaintiff alleges the bad tooth progressed into an abscess, which he complained about on June 6 or 9, 2005. (Id.) Plaintiff admitted that on June 9, 2005, almost immediately after that complaint, he saw a dentist. (ACHS's Br. in Supp. of Mot. for Summ. J., Ex. 3 at 84.) There was a dental office at the jail, and he was seen by the dentist on both occasions at this office. (Id. at 83-84.)

Plaintiff believed that the bad tooth was a molar; the tooth caused him pain and swelling. (Trautman Dep. at 82-83.) On July 12, 2005, ACHS progress notes indicate that plaintiff was ordered amoxicillin and motrin, and the medical professional noted "Dentist Fri. please." (Allegheny County's Mot. for Summ. J., Ex. I.)  When asked if he had problems with the tooth after receiving amoxicillin, plaintiff stated "I have had a tremendous amount of dental work done, so as to which tooth exactly that it is, we'd have to pull up my dental records to see."

(Trautman Dep. at 82.) On August 15, 2005, plaintiff was again prescribed motrin. (ACHS's Br. in Supp. of Mot. for Summ. J., Ex. 2.)

### *STANDARD OF REVIEW*

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The nonmoving party must point to specific affirmative evidence in the record, rather than rely upon conclusory or vague allegations or statements. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Concrete evidence must be provided for each element of each of the claims, and the evidence must be such that a reasonable fact-finder could find in that party's favor at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "A nonmoving party, like plaintiff, must 'designate specific facts showing that there is a genuine issue for trial.'" Orenge v. Veneman, No. 04-297, 2006 WL 2711651, at *6 (W.D. Pa. Sept. 20, 2006) (citing Celotex, 477 U.S. at 324).

A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. Anderson, 477 U.S. at 248. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any evidence that would be admissible at trial in deciding the

merits of a motion for summary judgment.  Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993); Pollack

v. City of Newark, 147 F. Supp. 35, 39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957) ("in

considering a motion for summary judgment, the court is entitled to consider exhibits and other

papers that have been identified by affidavit or otherwise made admissible in evidence").


### DISCUSSION

### I.    Cruel and Unusual Punishment Claim under the Eighth and Fourteenth Amendments[1]

Plaintiff's first count is an Eighth and Fourteenth Amendment cruel and unusual

punishment claim, brought under 42 U.S.C. § 1983.  Plaintiff's claim relates to an alleged failure

to provide medical care for an abscessed tooth and depression.

#### A.    Tooth Abscess

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor

excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend.

VIII. Under the Due Process Clause of the Fourteenth Amendment, the Cruel and Unusual

Punishment Clause of the Eighth Amendment applies to states. See Robinson v. California, 370

U.S. 660, 667 (1962) (analyzing a Fourteenth Amendment cruel and unusual punishment claim).

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court found that deliberate indifference

to a prisoner's serious medical needs is precisely the type of "unnecessary and wanton infliction

of pain proscribed by the Eighth Amendment." Id. at 104 (internal citation omitted). The

deliberate indifference standard is met where, for instance, prison medical staff acts with

indifference in responding to a prisoner's needs, denies or delays access to needed medical

---

[1] This claim was dismissed with respect to defendant Allegheny County. The claim is being considered here with respect to defendant ACHS.

treatment, or intentionally interferes with medical treatment that has already been prescribed. Id. at 104-05.  "To demonstrate a prima facie case of cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that defendants acted 'with deliberate indifference to his or her serious medical needs.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002) (citing Estelle, 429 U.S. at 104). This court will evaluate whether ACHS's conduct rose to the level of deliberate indifference to plaintiff's medical needs.

The deliberate indifference standard has two elements:   1) a "plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,'" and 2) "the plaintiff must make a 'subjective' showing that defendant acted with 'a sufficiently culpable state of mind.'" Montgomery, 294 F.3d at 499 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)).  The subjective component of a finding of deliberate indifference is satisfied where one knows of an excessive risk of harm and subsequently disregards that risk.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  With respect to plaintiff's claim in relation to his abscessed tooth, this court will consider each element.

1.  Objective showing

With respect to the first prong, the inquiry is whether an abscessed tooth constitutes an objectively serious medical need.  In Young v. Kazmerski, 266 F. App'x 191 (3d Cir. 2008), an inmate brought a § 1983 claim against his correctional facility's dentists, claiming they violated his constitutional right to be free from cruel and unusual punishment. In November 2004, a dentist pulled a number of the inmate's teeth, including all of his upper teeth. Two months later, the inmate complained that his remaining teeth cut into his upper gums; he complained of having trouble eating and sleeping. In January and March 2005, the inmate submitted official request forms requesting dentures. The inmate did not receive dentures until August 2005. Id. at 191-92.

The district court granted the dentists' motion for summary judgment.  On appeal, the Court of Appeals for the Third Circuit vacated the grant of summary judgment, holding that there was sufficient evidence to permit a reasonable fact-finder to conclude that the inmate had a serious medical need. Id. at 193. The court of appeals noted that a dentist told the inmate that he would arrange for dental impressions in December 2004 or January 2005, demonstrating awareness that care was needed.  The impressions were not taken, however, until months later. Id. at 193-94.

In Young, the court of appeals noted that according to the facility's protocols "dental emergencies" include treatment for "(1) cessation of hemorrhage; (2) relief of severe pain; (3) oral infections . . . ." Id. at 195 n.5. Although there is no evidence that ACJ had a similar protocol, the court concludes that a reasonable jury could find an oral infection in this case, i.e., the abscess, similarly amounts to a dental emergency. Plaintiff stated that he complained of pain from the tooth in May and June 2005, making known his problem to ACHS. There is a genuine issue of material fact whether the abscess was a serious medical need.  Plaintiff adduced sufficient evidence to support the first prong of the deliberate indifference test.

    2.  Subjective showing

With respect to the second prong of the test, the issue is whether ACHS acted with a sufficiently culpable state of mind.  This inquiry focuses on whether ACHS knew about and disregarded an excessive medical risk to plaintiff. To sustain an Eighth Amendment claim at the summary judgment stage, there must be evidence of record to show that a defendant engaged in the wanton and unnecessary infliction of pain upon a plaintiff.  The defendant's actions must be "repugnant to the conscience of mankind" and must "offend the evolving standards of decency." See Estelle, 429 U.S. at 105-06.

Viewing the disputed facts in favor of the nonmoving party, plaintiff, a reasonable jury could conclude that ACHS knew about a serious medical risk to plaintiff. Plaintiff testified in his deposition that his first request for treatment of his tooth was in May 2005, and he complained of the abscess in early June 2005.  There is no evidence of record, however, that defendant disregarded the risk. After both requests for treatment, plaintiff was seen by a dentist. There is no evidence of record that the type of treatment or medication he received on these two occasions was substandard. On July 12, 2005, ACHS's progress notes indicate a request for a dentist on Friday of that week, and show a prescription for amoxicillin and motrin. He was also prescribed motrin on August 15, 2005.

Although plaintiff alleges the dental treatment he received was delayed from June 6, 2005 until July 15, 2005, the evidence of record indicates that ACHS placed him under the care of a dentist as soon as he made requests. ACHS's responses to plaintiff's needs are not supportive of deliberate indifference.

Since the evidence of record demonstrates that plaintiff was promptly placed under the care of a dentist after both of his requests, at the very most ACHS could be found to be negligent. "A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 105-06; see Farmer, 511 U.S. at 835 (stating that mere negligence is insufficient to support an Eighth Amendment claim, as it fails to rise to the requisite level of deliberate indifference to support such a claim).  To the extent plaintiff alleges that the dentist's "bad tooth" diagnosis in May 2005 was wrong and that he should have been diagnosed as having an abscess at that time, such a claim does not satisfy the deliberate indifference standard. To the extent plaintiff alleges that the dentist did not give him the appropriate treatment or care in June

2005 for his abscessed tooth, such an allegation similarly does not amount to deliberate indifference.

For the above reasons, ACHS's motion for summary judgment is granted with respect to plaintiff's Eighth Amendment claim in relation to his tooth abscess.

**B.**   **Depression**

In addition to alleging that the delay in care of his tooth abscess was unconstitutional cruel and unusual punishment, plaintiff also alleges that the delay in care of his depression violated his constitutional rights. Plaintiff alleges that ACHS refused to provide him with a prescribed antidepressant, Effexor, from June 6, 2005 through July 15, 2005.  With respect to this claim, plaintiff must again demonstrate that (1) ACHS acted with deliberate indifference by establishing an objectively serious medical need and (2) showing that prison officials knew about and disregarded an excessive risk of harm. Wilson, 501 U.S. at 297.

1.   Objective showing

The Court of Appeals for the Third Circuit considers a medical need to be "serious" where a physician has diagnosed one with the condition and has indicated that treatment is required. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  A need may be considered "serious" where a layperson would identify the medical need as one requiring a medical professional's care. Id.  Although depression is a common fact of prison life, Graham v. Kyler, No. 01-1997, 2002 WL 32149019, at *3 (E.D. Pa. Oct. 31, 2002), it can be a serious medical illness. In Smith v. Carver, No. 07-575, 2008 WL 436911, at *4 (E.D. Pa. Feb. 15, 2008), an inmate diagnosed with depression, ADHD, RLS, and anxiety was found to have serious medical needs. Although here plaintiff was prescribed Effexor and medical records from ACHS indicate that plaintiff had signs, symptoms, and a history of depression, it is a close

question whether plaintiff's condition rises to the same level as that of the plaintiff in Smith.  In

Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir. 1987), the Court of Appeals for the Third Circuit

noted that "[i]n some situations in which the seriousness of injury or illness would be apparent to

a lay person, expert testimony would not be required, *e.g.*, a gunshot wound." Id. at 473 (quoting

City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983)). In other circumstances,

however, the court appeals held that expert testimony is required to establish that the injury is

serious. Boring, 833 F.2d at 473-74.  The court will assume for purpose of this analysis that

plaintiff satisfied the first prong.

     2.   Subjective showing

Even assuming plaintiff adduced sufficient evidence to establish the first prong of the

deliberate indifference test, plaintiff did not adduce sufficient evidence to meet the second prong.

The second prong may be established by, for instance, showing an intentional refusal to provide

care, delayed medical treatment for nonmedical reasons, a denial of prescribed medical

treatment, or a denial of reasonable requests for treatment that results in suffering or risk of

injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) (citing Lanzaro, 834 F.2d at 346).

On the other hand, minor delays in providing medical treatment to a prisoner generally are not

actionable where the delay does not result in further injury. See Parker v. Mulderig, No. 92-2645,

1993 WL 44275, at *6 (E.D. Pa. Feb. 17, 1993); Felders v. Miller, 776 F. Supp. 424, 427 (N.D.

Ind. 1991).

Plaintiff alleges he did not receive Effexor for two weeks after returning to ACJ from

ADA's House, and he did not receive Effexor from June 6 until July 15, 2005. After his return

on April 12, 2005, to ACJ from ADA's house, he did not receive medical treatment for his

depression for two weeks.  Medical records show and plaintiff's deposition testimony, however,

confirms that he met with medical personnel in April 2005 at intake when he returned to ACJ.  In United States ex. rel. Walker v. Fayette County, 599 F.2d 573, 575 (3d Cir. 1979), the Court of Appeals for the Third Circuit denied a motion to dismiss where the plaintiff alleged that he was denied a medical evaluation and medical treatment for a period of ten days after admission to a correctional facility. The court of appeals distinguished cases where the plaintiff alleges total denial of medical care altogether from those in which the plaintiff alleges mere inadequacy of care, and noted only the former are constitutional violations. Id. at 575 n.2.

While plaintiff may not have agreed with the level of medical care provided to him with respect to his depression, a reasonable jury could not find that ACHS knowingly disregarded a high risk of harm to plaintiff.  Plaintiff received an evaluation upon his return to ACJ, and he was prescribed Effexor within two weeks of returning.  It is also noteworthy that on February 23, 2005, plaintiff was prescribed Effexor for sixty days.  The sixty-day period would have ended April 24, 2005. Plaintiff was prescribed Effexor two days later, on April 26, 2005. Disagreements over the contours of a prisoner's medical treatment do not rise to the level of deliberate indifference.  See e.g., Lanzaro, 834 F.2d at 346.  In order to state a valid Eighth Amendment claim, plaintiff must allege conduct on the part of ACHS that shocks the conscience. Plaintiff failed to do so.

Plaintiff alleges he did not receive Effexor from June 6, 2005 until July 15, 2005, but the evidence of record is to the contrary. ACHS progress notes indicate that plaintiff was prescribed Effexor for sixty days on April 26, 2005. On June 28, 2005, sixty-three days after his April 26, 2005 evaluation, plaintiff was again prescribed Effexor for sixty days.  He was seen on July 23, 2005, and Effexor was ordered for him. "[C]ourts have consistently held that where a prisoner has received some medical care, the alleged impropriety of that treatment will not support an

eighth amendment claim." <u>Wilkins v. Owens</u>, No. 87-0954, 1987 WL 11940, at *1 (E.D. Pa. June 1, 1987).  In the instant case, it is clear from ACHS's medical records that plaintiff was seen by medical staff on numerous occasions and plaintiff received ongoing treatment.

After considering of the evidence of record, the court concludes that plaintiff did not present sufficient evidence from which a reasonable finder of fact could determine that ACHS acted with deliberate indifference to his serious medical need.  Summary judgment for defendant ACHS is appropriate with respect to plaintiff's Eighth Amendment claim with respect to treatment of his depression.

## II.      <u>Retaliation Claim under the First Amendment</u>

Plaintiff asserts that he made numerous complaints about being removed from alternative housing and returned to ACJ.  Plaintiff avers that defendants denied him medical and psychiatric care in retaliation for these complaints.  As a threshold matter, Allegheny County argues that it cannot be held liable because plaintiff failed to show it had a written policy that was behind the alleged deprivation.  The issue of municipal liability will be addressed first and then the issue of retaliation will be discussed.

### A.      <u>Municipal Liability – County of Allegheny</u>

Plaintiff claims that the alleged retaliatory acts were either committed on the instruction of Allegheny County or were approved and ratified by Allegheny County. Under § 1983, a municipality may not be held vicariously liable under a theory of respondeat superior. <u>Monell v. Dep't. of Soc. Servs.</u>, 436 U.S. 658, 691 (1978).  To hold a municipality liable, a plaintiff must establish that its "policy or custom is the 'moving force' behind a constitutional violation." <u>Sanford v. Stiles</u>, 456 F.3d 298, 314 (3d Cir. 2006).  "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly

constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403-04 (1997) (citing Monell, 436 U.S. at 694).  Once a § 1983 plaintiff specifically identifies a municipal policy or custom, he or she must demonstrate that the municipality's deliberate conduct was the moving force behind the deprivation. Brown, 520 U.S. at 404.

Plaintiff's allegation that Allegheny County should be held liable for the actions of its agents lacks probative evidence.  Plaintiff failed to offer evidence of a specific policy or a custom.  He did not show that any policy or custom of Allegheny County was the moving force behind a violation of his constitutional rights.  Accordingly, summary judgment in favor of Allegheny County is appropriate on count II.

**B.      § 1983 Retaliation**

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. CONST. amend. I. The First Amendment right to free speech is incorporated into the Fourteenth Amendment Due Process Clause, and for that reason is applicable to the states. See Miller v. Clinton County, 544 F.3d 542, 545 n.1 (3d Cir. 2008). Although plaintiff does not allege he was deprived of his right to speak directly, "[r]etaliation for the exercise of constitutionally-protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).

In order to establish retaliation in violation of the First Amendment pursuant to § 1983, a plaintiff must prove that (1) he or she was engaged in constitutionally protected speech, (2) he or she was treated adversely by a state actor, and (3) the protected speech was a substantial or

motivating factor in causing the retaliation. Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004); Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).

    1.  Engaged in protected speech

Plaintiff satisfies the first element. In plaintiff's second amended complaint, he avers that defendants retaliated against him for his complaints about being removed from the alternative housing facility.[2]  Speech is afforded protection under the First Amendment.  The constitutional protection, however, is limited for those who are lawfully imprisoned:

> "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948). . . .  On the other hand, inmates are not shorn of all constitutional rights at the prison gate. A developing constitutional jurisprudence has established that prisoners retain a residue of their First Amendment liberty interests in free speech, Pell v. Procunier, 417 U.S. 817, 822 (1974).

Saunders v. Packel, 436 F. Supp. 618, 622 (E.D. Pa. 1977).

With respect to the right to free speech within the prison environment, there is "authority stating that formal grievances are protected." Rosales v. Fischer, No. 07 Civ. 10554. 2009 WL 928260, at *10 (S.D.N.Y. Mar. 31, 2009). There is no authority, however, that "formal grievances alone are protected." Id.  In Rosales, the court held that a prisoner's letter complaining that a prison official threatened physically to harm him was a protected activity under the First Amendment, even though the complaint was not filed as a formal grievance. Id. at **10-11. In this case, plaintiff's complaints, to the extent they were not formal grievances or official requests for medical care, would constitute protected activity.

---

[2] While plaintiff asserts in his second amended complaint that he believes he was retaliated against as a result of his complaints, there is a variance with his testimony in his deposition, where he stated that he believed he was retaliated against in part because of the nature of the charges for which he was convicted. (Trautman Dep. at 90.)

2. <u>Adverse treatment</u>

A plaintiff may satisfy the second element by demonstrating that the particular adverse action would deter a person of ordinary firmness from engaging in constitutionally protected activity. <u>See e.g.</u>, <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001); <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000). This is a fact-driven determination based upon the circumstances of the particular case. <u>Allah</u>, 229 F.3d at 225.  In <u>Seiverling</u>, an inmate alleged that he was incarcerated in administrative segregation in retaliation for filing lawsuits against prison officials at the prison facilities in which he was previously incarcerated.  As a result, the inmate was not provided with access to the law library, was increasingly confined in his cell and had reduced access to rehabilitative programs.  <u>Id.</u> at 222. The court concluded that a reasonable person might be deterred from engaging in constitutionally protected activity under the circumstances and denied a motion to dismiss the inmate's retaliation claim. <u>Id.</u> at 225.

In the instant case, plaintiff argues a reasonable person would be deterred from making complaints about prison conditions or procedures if he or she knew that he or she would be subjected to a denial of medical treatment as a result of those complaints. Defendants counter by arguing that plaintiff did receive adequate medical treatment during incarceration.  For a government action to qualify as an adverse action, it need only dissuade an ordinary person from exercising a constitutional right; "[g]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." <u>Allah</u>, 229 F.3d at 224-25 (quoting <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)).  The delay in providing medical treatment, although not a violation of the Eighth Amendment, might be an act of retaliation in violation of § 1983.

While a delay or denial of medical treatment would likely deter an individual from making complaints or exercising his or her free speech rights, there is no evidence of record to indicate that ACHS actually took adverse action with respect to plaintiff's depression claim. Medical staff ordered Effexor for plaintiff's depression for sixty-day time spans; the prescriptions were renewed within days of expiring.  With respect to plaintiff's abscessed tooth claim, all evidence of record demonstrates that he received dental care relatively promptly after plaintiff complained about dental problems.  Although plaintiff argues that he received inadequate medical care, there is no evidence of record to support this assertion. To the extent there were minor delays in medical treatment and care, no reasonable jury could conclude those delays, which were slight, would deter a person of ordinary firmness from exercising constitutional rights.

3. <u>Causal connection</u>

Another difficulty in plaintiff's case arises with respect to the third element.  Plaintiff must establish a reasonably close causal link between the protected activity and the alleged retaliation.  The third element of a retaliation claim requires a plaintiff to show clearly that the protected activity in which he or she engaged was a significant motivating factor in the defendant's decision to take adverse action against him or her.  The plaintiff may demonstrate this "motivation" by alleging a chronology of events from which retaliatory action could be reasonably inferred. <u>Fortune v. Basemore</u>, No. 04-377, 2008 WL 4525373, at *5 (W.D. Pa. Sept. 29, 2008).

The Court of Appeals for the Third Circuit has held that the causation element for establishing a retaliation claim under § 1983 is subject to the same standard and analysis applied to a Title VII retaliation claim. <u>Brennan v. Norton</u>, 350 F.3d 399, 421 (3d Cir. 2003).  Two main

factors are relevant to the analysis: (1) timing and/or (2) evidence of ongoing antagonism. Abramson v. William Patterson Coll., 260 F.3d 265, 288 (3d Cir. 2001).

In the first prong, there must be a close temporal proximity between the protected activity and the adverse action.  Id.  While the court of appeals has not enumerated a stringent formula for what is considered to be too long of a gap between the protected activity and adverse action, the courts have held that a time span of several months is too great.  See Williams v. Phila. Hous. Auth., 380 F.3d 751, 760 (3d Cir. 2004) (two months too long to permit an inference of causation); George v. Genuine Parts Co., No. 04-108, 2007 WL 217684, at *11 (W.D. Pa. Jan. 25, 2007) (holding that, though suggestiveness is highly sensitive to the facts of each case, a three-month gap "is not so close as to be unusually suggestive of retaliatory motive, especially where an obvious and unimpeached non-retaliatory motive exists").

The United States Court of Appeals for the Third Circuit has been somewhat ambivalent with respect to whether timing alone is sufficient to satisfy the causation prong of the prima facie case.  See Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997) ("Temporal proximity is sufficient to establish the causal link."); Jalil v. Avdel Corp., 873 F.2d at 708 (causal link established where plaintiff discharged two days following employer's receipt of the plaintiff's EEOC claim); but cf. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (causation prong not established on timing alone where nineteen months passed following protected activity and adverse employment action: "Even if timing alone could ever be sufficient to establish a causal link, we believe that the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred."); Quiroga v. Hasbro, Inc., 934 F.3d 497 (3d Cir. 1991) (affirming lower court's determination that the timing of the plaintiff's discharge alone did not raise an inference of retaliation). Timing, however, in

connection with other types of suggestive evidence, is clearly sufficient to demonstrate the causal

link. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000).

In the instant case, even if defendants had taken an adverse action against plaintiff, he

failed to establish a causal link between his complaints about being removed from ADA's house

and defendants' alleged failure to provide adequate medical and psychiatric care.  Plaintiff was

removed from ADA's house on approximately April 12, 2005.  The alleged retaliatory action

(the denial of proper medical and dental care) was almost two months later – from June 6, 2005

through July 15, 2005.

In his deposition, plaintiff alleges that when he returned to ACJ in April 2005, he did not

receive depression medication for two weeks. Medical records of ACHS show that he was

previously prescribed Effexor for a period that would cover the first two weeks after his return to

ACJ.  He also was evaluated by medical personnel upon his return to ACJ.  The temporal

proximity, therefore, is not unduly suggestive.

Plaintiff failed to demonstrate a pattern of continual antagonism. A review of plaintiff's

medical records during incarceration and his own testimony during a deposition present ample

evidence that plaintiff was seen and treated by medical staff on numerous occasions.

Since there is no evidence of a delay, plaintiff could only claim that the treatment he

received was inadequate, and argue that treatment would deter a person from raising a complaint.

This claim, however, would be based on the medical staff's negligence.  In Payne v. Khoshdel,

No. 9:06CV148, 2007 WL 445989, at *1 (E.D. Tex. Feb. 6, 2007), an inmate complained that he

was assigned to prison work that he could not handle given his physical limitations. He claimed

he was thereafter denied medical treatment in retaliation for his complaint, in violation of §

1983. The court stated:

> In this case, [the inmate] has not shown that but for the alleged
> retaliatory motive, the actions of which he complains would not
> have occurred. Instead, the records show that [the doctor] was
> applying his medical judgment to the conditions which he
> observed and which were recorded in [the inmate's] medical
> records. While this medical judgment may have been mistaken or
> even negligent, [the inmate] has not shown that it was retaliatory.
> Instead, [the inmate] presents little more than his personal belief
> that he was the victim of retaliation, which is not sufficient to show
> that a constitutional violation occurred. His claim on this point is
> without merit.

Id. at *7. Given the lack of evidence of a delay in care, plaintiff's claim in this case could only be

based upon alleged unsatisfactory care. For similar reasons as those explained in Payne, no

reasonable jury could find a constitutional violation occurred.  Summary judgment will be

entered in favor of ACHS on plaintiff's retaliation claim.


### CONCLUSION

Summary judgment will be granted in favor of defendants with respect to all plaintiff's

claims.  No reasonable jury could find that defendants knowingly disregarded a risk to plaintiff's

safety through acts of deliberate indifference for purposes of plaintiff's cruel and unusual

punishment claim.  Summary judgment will be granted in favor of Allegheny County with

respect to plaintiff's retaliation claim because plaintiff failed to offer evidence of a policy or

custom that was behind a violation of his constitutional rights.  Finally, defendants' motions for

summary judgment will be granted with respect to plaintiff's retaliation claim on the merits,

because plaintiff failed to adduce sufficient evidence to create a genuine issue of material fact

that an adverse action was taken against him or that there was a causal link.

Dated: September 17, 2009

By the court:

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge